UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.

SECURITIES AND EXCHANGE COMMISSION,

    Applicant,

v.

CARLA MARIN,

    Respondent.
_____/

**SECURITIES AND EXCHANGE COMMISSION'S APPLICATION FOR AN ORDER TO SHOW CAUSE AND AN ORDER ENFORCING ADMINISTRATIVE SUBPOENAS**

Applicant Securities and Exchange Commission (the "Commission") applies for an order compelling Respondent Carla Marin to comply with the Commission's subpoena to appear for testimony in Miami, Florida [Exhibit 1, September 1, 2017 Subpoena for Testimony] and subpoena to produce documents [Exhibit 2, November 26, 2018 Subpoena for Documents]. The Commission also seeks an Order enforcing these administrative subpoenas. In support of this application, the Commission states as follows:

**I. BACKGROUND**

The Commission has been investigating Swiss America Securities, Ltd., formerly known as SureTrader and currently known as MintBroker International Ltd. ("Swiss America" or "SureTrader"), a Bahamas-based broker-dealer registered with the Securities Commission of the Bahamas but not with the Commission, and its owner, Guy Gentile, in connection with potential violations of the federal securities laws (the "Investigation"). Issues central to the potential

violations include whether Swiss America's customers include United States residents and the movement of customer funds.

Marin is the owner and sole employee of Mint Custody Limited ("Mint Custody"), a Delaware corporation which Marin claims is in the business of "holding custody" and which appears to have held Swiss America customers' funds during a time period relevant to the Commission's Investigation. The Mint Custody account was under Marin's exclusive control and she was the sole signatory on the account. Marin is also an attorney and a member of the New York bar. However, the Commission is not seeking to take her testimony concerning any attorney-client matters. Rather, we are seeking to take her testimony in her capacity as the owner of Mint Custody, and we are seeking documents. Marin failed to respond to the subpoena for documents, let alone identify any specific privileged materials responsive to it.

Shortly after the Commission issued its first subpoena to Marin, she closed the Mint Custody bank account. Marin then failed to appear for testimony on the date set forth in the subpoena for testimony and failed to produce any documents on the production date.

Since then, Marin has alternated between stating she would not appear for testimony absent a Court Order, agreeing to testimony dates in October 2018, requesting new dates for testimony in November or December 2018, and, most recently, stating in November 2018 that she will not appear for testimony <u>anytime in the foreseeable future</u> because her friend is experiencing a health crisis.

Similarly, Marin has failed to comply with the subpoena for production, using a variety of tactics. She ignored the subpoena, then asserted she would not comply absent a Court order, then made a blanket assertion of attorney-client privilege without identifying any privileged documents, then claimed she never received the subpoena, and finally, after the Commission

reissued the subpoena and served her again via hand delivery through a process server, she ignored the subpoena again.

For the reasons set forth below, the Commission requests that this Court enter an Order to Show Cause, compelling Marin to appear before the Court and show cause why the Commission's subpoenas for testimony and documents should not be enforced, and an Order enforcing the subpoenas.

## II. STATEMENT OF FACTS

### A. The Commission's Authority and Reason for Investigation

1. The Commission has issued a Formal Order Directing Private Investigation and Designating Officers to Take Testimony in the Matter of Traders Cafe (FL-03848) [Exhibit 3, Formal Order].

2. Under the Formal Order, members of the Commission's staff are officers of the Commission empowered to administer oaths, subpoena witnesses, compel their attendance, take evidence, and require the production of any books, papers, correspondence, memoranda, or other records deemed relevant or material to the investigation. *Id*.

3. The Formal Order directs the Commission's staff to conduct a private investigation to determine whether Trader's Cafe and its "affiliates and/or other individuals or entities related thereto" have engaged in, or are about to engage in, the enumerated potential violations of the federal securities laws. *Id*. The Investigation has revealed that Traders Café, a U.S.-based day trading firm, maintained a master account at SureTrader.

4. The Commission is investigating, among other things, possible ongoing violations of Section 15(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78o(a).

Section 15(a) prohibits unregistered broker-dealer conduct. *Id.*[1] Swiss America, a Bahamian broker-dealer, is not registered as a broker-dealer in the United States. Nor is its principal, Guy Gentile. However, at least one-half of Swiss America's clients are United States residents and it employs more than fifty "experienced employees," servicing more than 20,000 clients, and processing over 12,000 trades per day. [Exhibit 4, Swiss America Website].

5.  The Investigation has revealed that Swiss America and Gentile have transferred U.S. customer funds from overseas to the U.S. bank account at Wells Fargo for Marin's company, Mint Custody.

6.  Marin is the sole employee and owner of Mint Custody, a Delaware corporation Marin claims is in the business of "holding custody." [Exhibit 5, Bank Account Opening Documents, at p.2]. At all relevant times, Marin had exclusive control over Mint Custody and its U.S. bank account. *Id.* Marin is not registered with the Commission in any capacity. [Exhibit 6, Commission Attestation].

---

[1] "Because of the broker-dealer's role as an intermediary between customers and the securities markets, broker-dealers have been required to register with the Commission since 1935." Registration Requirements for Foreign Broker-Dealers, 54 FR 30013-01, 1989 WL 279892, at *30014-15 (July 18, 1989). "The definitions in the Exchange Act of broker and dealer and the registration requirements of section 15(a) of the Exchange Act were drawn broadly by Congress to encompass a wide range of activities involving investors and securities markets. Section 15(a) of the Exchange Act generally requires that any broker or dealer using the mails or any means or instrumentality of interstate commerce to induce or effect transactions in securities must register as a broker-dealer with the Commission." *Id.* Foreign broker dealers are not exempt from the S.E.C.'s registration and regulatory regime simply by virtue of their location outside of the United States. *See* Rule 15a-6(a)(1). "A broker-dealer that solicits a transaction with a U.S. investor must be registered with the Commission," and "solicitation" is construed broadly as "any affirmative effort by a broker or dealer intended to induce transactional business for the broker-dealer or its affiliates," and "includes efforts to induce a single transaction or to develop an ongoing securities business relationship." Registration Requirements for Foreign Broker-Dealers, 54 FR 30013-01, 1989 WL 279892 (July 18, 1989) at *30017-18.

7. Just days after the Commission issued its first subpoena to Marin in September 2017, Marin closed the Mint Custody account. [Exhibit 1, September Subpoena; Exhibit 7, Account Closing Documents].

8. Marin is an attorney licensed to practice law in New York, Connecticut, and the District of Columbia.

### B. The Commission's Subpoenas, and Marin's Failure to Comply

9. On September 1, 2017, the Commission issued a subpoena for Marin to appear for testimony in Miami, Florida on September 19, 2017. [Exhibit 1].

10. Over the course of more than one year, Marin has alternated between refusing to appear absent a Court Order, agreeing to specific dates for her testimony but cancelling her appearance shortly before the testimony date, seeking extensions of time for her testimony, and, most recently, stating she will never appear for testimony. Some of this history is as follows:

   a. **Marin fails to appear for testimony.** On September 19, 2017, Marin fails to appear for her testimony pursuant to the subpoena.

   b. **After failing to appear, Marin claims the Commission cannot compel her testimony in Miami.** On September 25, 2017, Marin, who is then *pro se*, asserts that the Commission lacks jurisdiction and cannot compel her appearance in Miami for testimony [Exhibit 8].

   c. **Marin then agrees to testify in New York on specific dates and the Commission accommodates Marin by rescheduling her testimony to occur in New York on a date Marin chose.** On October 13, 2017, Marin states she will appear for testimony in New York and offers November 7-10, 2017 for her rescheduled testimony. *Id.* Accordingly, Marin's testimony is rescheduled for November 9, 2017 at the Commission's New York Regional Office. *Id.*

   d. **Shortly before the rescheduled testimony date, Marin states she will not attend her rescheduled testimony because her opposing counsel's father on another case is on life support.** On November 3, 2017, Marin claims she cannot appear on November 9, 2017 because "an attorney adversary's father was just put on life support." *Id.* Marin offers November 20, 2017 as a new date for her testimony. *Id.*

     e. **The Commission then reschedules Marin's testimony a second time on a date Marin chose.**  The Commission reschedules Marin's testimony to occur in New York on November 20, 2017.  [Exhibits 9 & 10].

     f. **Three days before the second rescheduled testimony date, Marin states she will not appear.**  On November 17, 2017, Marin's newly-retained counsel ("First Counsel") states Marin will not appear for testimony on November 21, 2017.  [Exhibit 11].

     g. **Marin's First Counsel states the earliest Marin can testify is December 15, 2017.**  On November 24, 2017, Marin's counsel advises the Commission that Marin can appear for testimony in New York on December 15, 2017.  *Id.*  Before expending resources for travel and court reporter arrangements a third time, on November 27, the Commission asks Marin's counsel to confirm that she will appear this time.  *Id.*

     h. **Marin's First Counsel changes course and asserts Marin will not appear for testimony absent a Court Order.**  On December 5, 2017, Marin's First Counsel advised the Commission that she will not appear for testimony pursuant to the subpoena absent a Court Order compelling her appearance.  [Exhibit 12].

     i. **The Commission continues its Investigation by issuing a subpoena for documents, which she similarly will not produce.**  On December 6, 2017, the Commission issues a subpoena for documents to Marin and serves her by mailing the subpoena to the address under which is registered with the New York, Connecticut, and District of Columbia bars and emailing the subpoena to her counsel.  [Exhibit 13].

     j. **Marin refuses to produce documents absent a Court Order.**  [Exhibit 14].  Marin's First Counsel ignores the Commission's repeated requests to understand why she would not comply with <u>any</u> subpoena absent a Court Order.

     k. **The Commission continues the Investigation and confirms we must obtain Marin's testimony and document production.**

     l. **Marin's First Counsel notifies the Commission he no longer represents Marin.**  [Exhibit 15].

     m. **The Commission once again confers with Marin directly, as she is now once again *pro se*, and she states for the first time that she is an attorney for Guy Gentile and asserts she cannot produce unless the Court "waive[s]" the attorney-client privilege.**  The Commission reaches out to Marin directly to ask if she will comply with the subpoena and appear for testimony.  Without answering the question directly, Marin states that she is an attorney for Guy Gentile[2] and a Court must "remove" the attorney-client privilege.  [Exhibit 17].

---

[2] Marin has never identified how or in what matter she has ever represented Gentile or his entities, and she has not appeared as an attorney for Guy Gentile in connection with the Commission's Investigation.  On Marin's law firm website, she identifies her practice areas are Real Estate, Real Property, Trademarks and Service marks, and Campaign Finance.  [Exhibit 16, Marin Website].  Whether Marin is an attorney is not relevant to the Commission's inquiry

    n. **The Commission explains to Marin that we are not seeking her testimony in connection with her work as an attorney or any privileged matter.**  On September 4, 2018, the Commission asks Marin to confirm whether she can appear for testimony September 13, 2018, and offers to conduct the testimony in New York as a courtesy.  [Exhibit 18].  Marin responds that she nonetheless requires Gentile's "permission" to testify and that she is unable to set a testimony date.  *Id.*

    o. **The Commission confers with Marin, who is an attorney, about blanket assertions of privilege and requests dates for her testimony and document production.**  On September 7, 2018, the Commission confers with Marin about blanket assertions of privilege, offers her case law that privilege is properly asserted on a question-by-question basis at testimony rather than by simply refusing to appear, offers to speak to discuss the issue in more detail, and requests dates in September for her testimony.  *Id.*  Marin requests case citations for the principle that a blanket assertion of privilege is improper.  *Id.*  The Commission sends Marin the case law she requested [Exhibit 19] and offers to take her testimony in New York as a courtesy. [Exhibit 20].

    p. **Marin claims she requires more time to review and evaluate responsive documents, and offers October 3 or 10, 2018 for her testimony.**  The Commission then reschedules the testimony to occur on October 3, 2018 in New York and reschedules the production date for documents.  [Exhibit 21].  On September 14, 2018, Marin confirms she will appear to testify on October 3, 2018.  [Exhibit 22].

    q. **Marin then cancels the fourth rescheduled testimony date.**  On September 27, 2018 the Commission is contacted by new counsel who tells us Marin cannot appear for the October 3 testimony, counsel requires time to prepare, and she cannot provide a timeframe for when Marin will appear.  [Composite Exhibit 23].

    r. **Marin's Second Counsel confers with undersigned and Assistant Regional Director Jessica Weissman by telephone about the document production, and reads us the requests in the subpoena for documents that she believes seek privileged documents.**  This call occurs October 9, 2018.  Marin's Counsel also asks the Commission to provide proof that the subpoena for documents was served.

    s. **Three days later, Marin's Second Counsel claims the address to which the Commission served the subpoena for documents is an incorrect address.**  Marin's Second Counsel asserts Marin was not served, despite the fact that she read to us from the subpoena three days prior, the Commission never sent the subpoena to Marin's Second Counsel, Marin's First Counsel had also previously conferred about the subpoena for documents, and Marin herself had previously conferred with the Commission about the subpoena for documents.

    t. **Marin claims she cannot travel for testimony until November or December**.  Marin's Second Counsel suggests October 29, 30, or 31 for testimony and asks that it take place in New York.  [Exhibit 24].  The Commission requests other dates in October for

---

concerning Marin's Mint Custody business, her business transactions, her use and transfer of investor funds through Mint Custody, and her other conduct in her capacity as a non-lawyer.

the testimony to occur in Miami pursuant to the subpoena, and Second Counsel advises that Marin cannot travel to Miami until November or December. [Exhibit 25].

u. **The Commission offers Marin sixteen (16) additional options for testimony dates in Miami in November**. [Exhibit 26].

v. **Two weeks later, Marin's Second Counsel finally responds, claiming she will only testify in New York and cannot appear until January 2019.** [Exhibit 27].

w. **Marin's Second Counsel claims Marin will not comply with the subpoena for documents because it was not properly served and the subpoena seeks documents "concerning Ms. Marin's client(s)."** *Id.*

x. **The Commission offers additional testimony dates and offers to travel to New York to accommodate Marin.** [Exhibit 28].

y. **On November 9, 2018, Marin's Second Counsel responds to the Commission's offer of additional dates in the location Marin selected, stating Marin "does not intend to appear for testimony at this time. Sorry for the inconvenience."** [Exhibit 29]. When asked to provide clarification, Marin's Second Counsel advises the Commission that we should "assume that she will not appear" because "her very close friend is facing a serious health crisis." *Id.*

z. **On November 19, the Commission began efforts to again serve Marin with a subpoena for documents via a process server.** The subpoena includes the same requests as the December 2017 subpoena, and sets December 10, 2018 as the production date. [Exhibit 2].

aa. **On December 2**, **the Commission serves Marin, this time via process server, with a re-issued subpoena for documents.** *Id.* Despite questioning Marin's assertion that she did not receive the subpoena for documents, the Commission re-serves the subpoena to the same address where Marin was recently served in a civil case without objection. *U.S. v. Marin*, 18-cv-09307 (S.D.N.Y.) (civil case alleging Marin's violations of the federal tax laws).

bb. **Marin fails to produce documents on December 10, 2018.**

cc. **On December 10, 2018, a third, newly-retained counsel ("Third Counsel") contacts the Commission to request more time to get up to speed on the case and respond to subpoena for documents.** The Commission grants Third Counsel a five-day extension, until December 15, 2018, and advises Third Counsel that Marin has had the subpoena for about a year and Marin and her two prior counsel have conferred about it with the Commission. After Third Counsel raises question about the Commission's scope of authority to issue the subpoenas under the Formal Order, undersigned counsel emails them case law. [Exhibit 30].

dd. **On December 14, 2018, Third Counsel refuses to comply with the subpoena.** Third Counsel states that "Marin is not able to respond to the subpoena based upon

her good faith objections to its validity (outside the statute of limitations) and breadth." They also claim a lack of any nexus between the subpoena and the Formal Order. [Exhibit 31].

    ee. **Commission staff attempts to confer with Third Counsel, and they do not respond to our efforts.**  *Id.*

  11. The Commission has exhausted all efforts to obtain Marin's testimony. Despite reissuing the subpoena for documents and serving Marin again, she refuses to comply. Accordingly, we are seeking an Order to Show Cause why Marin should not appear for testimony and produce documents pursuant to the subpoenas, and an Order enforcing the subpoenas.

### III.  MEMORANDUM OF LAW

#### A.  The Court Has Jurisdiction And Venue Properly Lies In This District

Congress gave the Commission broad authority to conduct investigations and require production of evidence and testimony relevant to those investigations.  *See, e.g.*, Sections 21(a) and (b) of the Exchange Act, 15 U.S.C. §§ 78u(a) and (b) ("For the purpose of any such investigation, or any other proceeding under this title, any member of the Commission or any officer designated by it is empowered to administer oaths and affirmations, subpoena witnesses, compel their attendance, take evidence . . . ."); *see also S.E.C. v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 745 (1984) ("It appears, in short, that Congress intended to vest the Commission with considerable discretion in determining when and how to investigate possible violations of the statutes administered by the Commission"); *S.E.C. v. Dresser Indus., Inc.*, 628 F.2d 1368, 1380 (D.C. Cir. 1980) (given the Commission's broad statutory mandate to investigate, there was "virtually no possibility" the Commission exceeded its authority in issuing an investigative subpoena).

When parties refuse to comply with lawful Commission demands for testimony and documents issued pursuant to the Commission's broad statutory authority to investigate, Congress has authorized the Commission to seek, and the federal courts to issue, orders compelling production or testimony.  "In case of . . . refusal to obey a subpoena issued to any person, the Commission may invoke the aid of any court of the United States within which the jurisdiction of which such investigation or proceeding is carried on . . . in requiring the attendance and testimony of witnesses and the production of books, papers, correspondence, memoranda, and other records."  Section 21(c) of the Exchange Act, 15 U.S.C. § 78u(c).  That very language also provides that venue lies in the Southern District of Florida, as it provides the

Commission may seek a court order "within which the jurisdiction of which such investigation or proceeding is carried on, or where such person resides or carries on business." *Id*.

Here, venue is proper in this district because the Investigation is being carried on in and requires Marin to appear in the Southern District of Florida. [Exhibits 1 & 2].

### B. The Court Should Conduct A Summary Proceeding

Under Rule 81(a)(5), *Proceedings Involving a Subpoena,* the Federal Rules of Civil Procedure apply, except as otherwise provided by statute, local rule, or by court order in the proceedings. As the Court noted in *United States v. Elmes,* 532 F.3d 1138, 1144 (11th Cir. 2008), summons enforcement proceedings are "most appropriate for streamlined procedures" (internal citation omitted). *See also S.E.C. v. Sprecher*, 594 F.2d 317, 320 (2d Cir. 1979) (upholding right of district court to enforce subpoenas in summary proceedings without the filing of a complaint pursuant to Section 22(b) of the Securities Act, 15 U.S.C. § 77v(b), which allows a district court to enforce a subpoena "upon application by the Commission"); *SEC v. McCarthy* 322 F.3d 650, 655 (9th Cir. 2003) ("summary proceedings may be conducted without formal pleadings, on short notice, [and] without summons and complaints. . .") (quoting *New Hampshire Fire Ins. Co. v. Scanlon,* 362 U.S. 404, 406 (1960)); *First Nat'l Bank of Miami Springs,* 655 F.2d 661, 663 (5th Cir. 1981) ([Rule 81(a)(3)] make[s] application of the rules of civil procedure in subpoena enforcement proceedings discretionary with the district court").[3]

Accordingly, the Commission asks the Court to promptly set an Order to Show Cause Hearing so that Marin's failure to comply with the subpoena is not allowed to continue. *S.E.C. v. First Security Bank*, 447 F.2d 166, 168 (10th Cir. 1971).

---

[3] The predecessor to Rule 81(a)(5) is 81(a)(3), but the change was "without substantive difference." *US v. AS Holdings Group, LLC,* 521 Fed. Appx. 405, 409, fn. 2 (6th Cir., April 3, 2013).

### C. The Commission's Subpoena Satisfies All Requirements for Enforcement

A district court's role in a proceeding to enforce an administrative subpoena "is limited." *EEOC v. Tire Kingdom, Inc.*, 80 F.3d 449, 450 (11th Cir. 1996). Under that limited review, a court should enforce an administrative subpoena if it is reasonably relevant to an authorized investigation. *Id.; EEOC v. Technocrest Sys.,* 448 F.3d 1035, 1040 (8th Cir. 2006).

Courts have generally looked at four criteria to determine whether to enforce a Commission subpoena: (1) the investigation is being conducted pursuant to a legitimate purpose; (2) the inquiry is relevant to that purpose; (3) the information the Commission seeks is not already in its possession; and (4) the Commission has fulfilled the necessary administrative steps. *United States v. Powell*, 379 U.S. 48, 57-58 (1964); *RNR Enterprises, Inc. v. S.E.C.,* 122 F.3d 93, 96-97 (2d Cir. 1997); *S.E.C. v. Howatt*, 525 F.2d 226, 229 (1st Cir. 1975); *S.E.C. v. Brigadoon Scotch Distributing Co.*, 480 F.2d 1047, 1053 (2d Cir. 1973). Once the Commission satisfies these criteria, the burden shifts to a respondent to demonstrate the subpoena is unreasonable. *Brigadoon Scotch,* 480 F.2d at 1056. However, the burden of showing unreasonableness "is not easily met" as long as the Commission's inquiry is legally authorized and the information it seeks is relevant to the inquiry. *Id.*

#### 1. The Commission's Purpose is Lawful

As discussed above, Congress has given the Commission broad authority to investigate whether the federal securities laws, rules, and regulations "have been or are about to be violated." Section 20(a) of the Securities Act, 15 U.S.C. § 77t(a); Sections 21(a) and (b) of the Exchange Act, 15 U.S.C. §§ 78u(a) and (b). Pursuant to that authority, the Commission issued the Formal Order authorizing designated officers to conduct an investigation into possible violations of Sections 5(a), 5(c) and 17(a) of the Securities Act and Sections 15(a) and 10(b) of

the Exchange Act and Rule 10b-5 thereunder by Traders Cafe, its affiliates, and any related persons and entities. [Exhibit 2].

Pursuant to the authority conferred under the Formal Order, the Commission's investigative team issued subpoenas to Marin seeking her testimony and the production of documents. The subpoenas are within the parameters of the Commission's broad discretion to investigate: "For the purpose of any such investigation, or any other proceeding under this title, any member of the Commission or any officer designated it is empowered to administer oaths and affirmations, subpoena witnesses, compel their attendance, take evidence . . . ."); *see also O'Brien,* 467 U.S. at 745 ("It appears, in short, that Congress intended to vest the SEC with considerable discretion in determining when and how to investigate possible violations of the statutes administered by the Commission."); *Dresser Indus.*, 628 F.2d at 1380 (given the Commission's broad statutory mandate to investigate, there was "virtually no possibility" the Commission exceeded its authority in issuing an investigative subpoena).

Accordingly, the Commission's purpose in issuing the subpoenas was lawful.

### 2. The Commission Seeks Relevant Information

The measure of relevance used in subpoena enforcement actions is "quite broad." *United States v. Florida Azalea Specialists*, 19 F.3d 620, 624 (11th Cir. 1994). A district court may enforce a subpoena so long as "the materials sought are not clearly irrelevant or immaterial." *S.E.C. v. Arthur Young & Co.*, 584 F.2d 1018, 1029 (D.C. Cir. 1978) (upholding district court's use of that language as standard for relevance).

The Commission is investigating possible ongoing violations of the federal securities laws. The potential violations are serious and wide-ranging. There are numerous customers and

a tremendous amount of customer money at issue, some of which passed through accounts in the U.S. that Marin controlled.

Marin's testimony and the documents sought are highly pertinent to the Commission's Investigation. The Investigation concerns, among other things, an overseas brokerage soliciting U.S.-based customers in violation of the federal securities laws. Those customer accounts and funds, and the use of U.S. accounts to retain or utilize those funds, is highly relevant to the Commission's inquiry. Marin's Mint Custody company received and redirected some of these funds in the U.S. Marin had sole control over U.S.-based Swiss America customers' funds. [Exhibits 4 & 6]. However, shortly after the Commission issued a subpoena to Marin, she closed the account. [Exhibit 7].

The testimony and evidence sought from Marin is relevant to the Investigation, which concerns matters play a significant role in protecting investors. Registration Requirements for Foreign Broker-Dealers, Sec. Rel. No. 25801; 53 FR 23645, 1988 WL 1000013 (June 14, 1988) ("Registration of market professionals is a key element in the federal statutory scheme and plays a significant role in protecting investors."). "[Registration] promotes baseline levels of integrity among broker-dealers and their personnel dealing with investors, through statutory disqualification provisions and the Commission's disciplinary authority; retention of sufficient capital to operate safely, through Commission net capital requirements; and maintenance of adequate competency levels, through self-regulatory organizations ("SRO") qualification requirements." *Id.* The Commission's broad enforcement authority over broker-dealers "helps assure that investors in the U.S. securities markets are protected by the statutory and regulatory provisions governing the U.S. securities industry." *Id.* Moreover, "the Commission's financial supervision of all entities participating in the interdependent network of securities professionals

contributes to the financial soundness of this nation's securities markets." *Id.* **3. Marin**

**Possesses Information the Commission Lacks**

Marin possesses information the Commission lacks. She owns Mint Custody, which controlled the customer funds at issue in the Investigation. With the exception of some bank records, documents pertaining to Mint Custody are not in our possession. The role of Mint Custody in connection with Swiss America, Guy Gentile, and the holding and movement of customer funds is critical to the Commission's inquiry. Marin's testimony concerning those matters is therefore highly pertinent to the Investigation. As set forth above, the Commission has continued the Investigation since the initial date of the subpoena. We cannot obtain the evidence concerning Mint Custody absent Marin's testimony and production of documents.

**4. The Commission Has Satisfied All Necessary Administrative Steps**

The Commission issued the Subpoena in accord with all applicable administrative requirements. Section 19(c) of the Securities Act, 15 U.S.C. § 77s(c), and Section 21(b) of the Exchange Act, 15 U.S.C. § 78u(b), empower the Commission to subpoena documents and testimony in the course of investigations. Here, Sajjad Matin, an attorney for the Division of Enforcement, designated as an officer of the Commission in the Formal Order, issued the Subpoena to Marin. [Exhibits 1 & 2].

**D. Marin Cannot Show the Subpoenas Are Unreasonable And Her Excuses Lack Merit**

**1. The Subpoenas Are Reasonable – And Marin Does Not Argue To The Contrary**

As set forth above, the Commission has satisfied all requirements for enforcement of the subpoenas. Accordingly, Marin would have to demonstrate that the subpoenas are unreasonable. *Brigadoon Scotch,* 480 F.2d at 1056. Because the Commission's inquiry is legally authorized and the Commission seeks information relevant to the Investigation, Marin's burden "is not

easily met." *Id*. Marin has not argued that any subpoena is unreasonable. Accordingly, she cannot meet this burden. Instead, she has offered different excuses over the past year, primarily revolving around the health of her friend or the health of her opposing counsel's father, as the reason she will not appear.

### 2. Marin Cannot Use Her Law License As A Shield To Avoid Compliance

At various times over the course of the conferrals in this matter, Marin has indicated she will not comply with the subpoenas because she is a lawyer and purportedly represents Gentile and his companies. Marin has not identified this purported attorney-client relationship with Gentile or any company, and the Commission is aware of none. Marin has not identified any request that seeks attorney-client privileged information. Nor has Marin identified any responsive document that is privileged. Instead, she has done nothing more than make a blanket assertion of privilege. She has utterly failed to meet her burden of proof for raising a privilege claim.

#### a. Marin Has Made No Attempt To Meet The Burden of Demonstrating An Attorney-Client Privilege Exists

To properly raise an attorney-client privilege, Marin has the burden of establishing (1) the existence of an attorney-client relationship and (2) the confidential nature of the information sought. *In re Grand Jury Subpoena*, 831 F.2d 225 (11th Cir. 1987) (reversing and remanding district court order quashing subpoena for documents based on attorney's blanket assertion of attorney-client privilege). She has made no attempt to meet either burden.

Marin has failed to identify in what regard (if any) she is or was ever retained by *anyone*. Thus, she cannot meet the first element of establishing a privilege exists. As to the second element, Marin has not appeared for testimony and thus has not – and cannot – identify any response to any testimony question that is privileged. Further, as the Commission has repeatedly

advised Marin, we are not seeking testimony about any privileged communications. "The attorney-client privilege exists to protect confidential communications between client and lawyer made for the purpose of securing legal advice." *In re Slaughter*, 694 F.2d 1258, 1260 (11th Cir. 1982). The Commission is seeking Marin's testimony in connection with conduct related to her ownership of Mint Custody, and as a person who has received investor funds from Gentile's companies, maintained a bank account apparently for that purpose, moved investor funds, and has done business with Gentile and his companies, either directly or through her company Mint Custody. These questions do not seek privileged information. *In re Grand Jury Investigation*, 769 F.2d 1485, 1488 (11th Cir.1985) ("[T]hese questions do not seek information of appellant concerning actions taken in a legal capacity, but rather focus on the attorney's actions as banker and business advisor for his client. Questions pertaining to such activities are not precluded by the attorney work-product privilege.").

As for the subpoena for documents, Marin has not identified a single responsive document that is privileged. Subpoena request numbers 1-8 seek transactional and business documents, which are not covered by the attorney-client privilege. *In re Grand Jury Subpoena*, 831 F.2d at 228 ("An attorney who acts as his client's agent for receipt or disbursement of money or property to or from third parties is not acting in a legal capacity, and records of such transactions are not privileged."); *In re Grand Jury Investigation,* 769 F.2d at 1488 (matters relating to an attorney's actions as banker or business advisor are not privileged). To the extent any responsive documents are privileged, she has not met her burden of identifying a single one, let alone demonstrating a privilege exists.

Accordingly, Marin has not met her burden of demonstrating any attorney-client privilege in connection with the subpoenas.

### *b. Marin's Blanket Assertion of Privilege Is Improper*

Marin's blanket assertion of privilege to avoid appearing for testimony and responding to the subpoena for documents is improper. "A party cannot meet its burden of proof with a blanket assertion of privilege." *In re Grand Jury Subpoena*, 831 F.2d 225 (11th Cir. 1987) (reversing and remanding district court order quashing subpoena for documents based on attorney's blanket assertion of attorney-client privilege). Whether Marin's testimony or document production could incriminate Marin or one of her purported clients is not relevant. *In re Grand Jury Matter No. 91-01386*, 969 F.2d 995, 997 (11th Cir. 1992) (reversing district court order quashing subpoena on attorney-client privilege grounds) ("Merely because a matter which a lawyer is asked to reveal might incriminate a client does not make that matter privileged. The privilege is not designed to protect revelation of incriminating matters, only confidential communications between the attorney and client regarding the matter of representation.").

As for the subpoena for testimony, it is well-established in this Circuit that "privilege is not a defense to enforcement of a summons to testify; such claims are tested by refusing to answer specific questions after enforcement and defending the subsequent contempt proceeding." *United States v. Davis*, 636 F.2d 1028, 1039 (5th Cir. Feb. 12, 1981) (affirming enforcement of administrative subpoena and rejecting blanket claim of attorney-client privilege for failure to appear for testimony). Similarly, in connection with a subpoena for documents, an attorney may invoke the attorney-client privilege on behalf of her clients, but must do so on a document-by-document basis. *In re Grand Jury Subpoena*, 831 F.2d at 257.

Accordingly, even if Marin meets her burden of demonstrating an attorney-client relationship with Gentile or his companies – which she has yet attempted – Marin must comply with the subpoenas. The Court should order Marin to appear for testimony, where, if a privilege

exists, she would have an opportunity to refuse to answer specific questions on the basis of attorney-client privilege. The Court should also order Marin to respond to the subpoena for documents, and to raise any privilege claims on a document-by-document basis.

## IV. CONCLUSION

The Commission has satisfied all the requirements for enforcement of the subpoenas. Accordingly, the Commission requests this Court to expeditiously conduct a summary proceeding and issue an Order to Show Cause compelling Marin to appear before the Court and show cause why the Commission's subpoenas should not be enforced. The Commission also seeks an Order enforcing the subpoenas.

February 6, 2019                                    Respectfully submitted,

                                                 By:       <u>Amie Riggle Berlin</u>
                                                          Amie Riggle Berlin, Esq.
                                                          Senior Trial Counsel
                                                          Florida Bar No. 630020
                                                          Direct Dial: (305) 982-6322
                                                          Email: berlina@sec.gov

                                                          Attorney for Plaintiff
                                                          **SECURITIES AND EXCHANGE   COMMISSION**
                                                          801 Brickell Avenue, Suite 1800
                                                          Miami, Florida  33131
                                                          Telephone: (305) 982-6300
                                                          Facsimile:   (305) 536-4154

## CERTIFICATE OF CONFERRAL

I hereby certify that, as set forth in this Application, Commission staff and I conferred with counsel for Carla Marin in an effort to resolve this matter and asked Marin's counsel to confer further, but counsel did not respond to our request.