UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:19-mc-20493-UU-O'SULLIVAN

SECURITIES AND EXCHANGE COMMISSION,

    Applicant,

v.

CARLA MARIN,

    , Respondent.

_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before the Court pursuant to the Securities and Exchange Commission's Application for an Order to Show Cause and an Order Enforcing Administrative Subpoenas (DE # 1, 2/6/19). This case was referred to Chief United States Magistrate Judge John J. O'Sullivan pursuant to 28 U.S.C. §636. The undersigned held an evidentiary hearing in this matter, and thereafter, required the parties to submit briefs to the Court regarding the issue of personal jurisdiction. Both the applicant and the respondent filed the aforementioned briefs. Having carefully considered the oral arguments, the evidence heard during the evidentiary hearing, the filings, and the applicable law, the undersigned recommends that the Securities and Exchange Commission's Application for an Order to Show Cause and an Order Enforcing Administrative Subpoenas (DE # 1, 2/6/19) be GRANTED in accordance with the following Report and Recommendation.

## **BACKGROUND**

In September 2017, and December 2018, the SEC issued subpoenas (the first for testimony, the second for documents) to the respondent, Carla Marin, as part of an investigation into Swiss America Securities, Ltd., formerly known as SureTrader, ("Swiss America" or "SureTrader"), a Bahamas-based broker-dealer, and its owner, Guy Gentile, in connection with potential violations of the federal securities laws.[1] The potential violations included unregistered broker-dealer conduct as prohibited under Section 15(a) of the Securities and Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u(a). Swiss America is registered with the Securities Commission for the Bahamas, but not with the SEC. The respondent is the sole owner and employee of Mint Custody Limited, a Delaware corporation purportedly in the business of "holding custody." Prior to issuing subpoenas to the respondent, the SEC's investigation revealed that Swiss America had transferred United States customer funds from overseas to Mint Custody's bank account at Wells Fargo. (DE #1 at 4, 02/06/2019).

The first subpoena requested that the respondent testify in Miami, Florida on September 19, 2017. (DE #1 at 5, 02/06/2019). The second subpoena requested that the respondent produce various documents, such as Mint Custody's stock ledgers, registration and incorporation documents, as well as communications regarding Swiss America and its owner. (DE # 1-3 at 4-5, 02/02/2019). The SEC sought this information to determine whether Mint Custody held funds of Swiss America customers during a

---

[1] There was another subpoena for documents issued to Marin in December 2017, but Marin claimed at one point that the December 2017 subpoena was not served on her, so the same subpoena was served on Marin again in December 2018.

2

time period relevant to the SEC's investigation into Swiss America. (DE #1 at 1, 02/06/2019). Central issues to the potential securities violations include: (1) whether Swiss America's customers include United States residents; and (2) the movement of funds. (DE# 1 at 1-2, 02/06/2019). The SEC seeks information from the respondent because funds at issue passed through accounts in the United States that the respondent controlled. (DE# 1 at 13-14).

The respondent failed to appear to testify as requested by the September 2017, subpoena and did not produce the documents requested in the subpoena for documents. (DE #1 at 5, 02/06/2019). On September 25, 2017, the respondent, then *pro se*, contacted SEC staff via email claiming that the SEC lacked jurisdiction to compel the respondent to appear in Florida. (DE #1 at 5, 02/06/2019). The respondent then agreed to testify in New York, and the SEC agreed to reschedule her testimony for November 9, 2017, at the SEC's New York Regional Office. (DE #1 at 5, 02/06/2019). Days before the rescheduled testimony date, the respondent requested another rescheduling, which the Commission accommodated. (DE #1 at 6, 02/06/2019). However, the respondent again rescheduled, but then cancelled after retaining counsel, who asserted that the respondent would not testify absent a court order. (DE #1 at 6). The respondent continued to refuse to testify or produce documents over the following 13 months, despite the SEC's repeated efforts to subpoena the respondent via process server. (DE #1 at 5-9, 02/06/2019). The respondent's purported reasons for refusing to testify or produce documents ranged from illness of family friends, to incorrect address information on the SEC's subpoenas. (DE #1 at 5-9, 02/06/2019). Also during that time, the respondent's first counsel withdrew, and the respondent retained second counsel,

who also withdrew. (DE #1 at 6, 7-8, 02/06/2019). The respondent retained third counsel who continued the respondent's refusal to comply with the subpoena, despite the re-service of the subpoena for documents on Marin via process server in December 2018. (DE #1 at 8, 02/06/2019). Having exhausted all efforts to obtain the respondent's testimony, the SEC petitioned this Court seeking an Order to Show Cause why Marin should not appear for testimony and produce documents pursuant to the subpoenas, and an order enforcing the subpoenas. (DE #1 at 9, 02/06/2019).

On March 19, 2019, an evidentiary hearing was held in this matter before the undersigned. The SEC called Jessica Maria Weissman, an assistant regional director to the division of enforcement at the SEC, to testify. Ms. Weissman indicated that she oversees investigations within the enforcement division of the SEC, one of which is the Traders Café investigation, which she has overseen for about four and a half years. Ms. Weissman further indicated that the Traders Café investigation was entirely separate from the SEC enforcement litigation in New Jersey involving Guy Gentile, and that there was no connection between the Miami investigation and the litigation against Mr. Gentile. The Formal Order of Investigation authorizes the SEC to conduct the Miami investigation and the investigation is ongoing. According to Ms. Weissman, the Formal Order does not expire and does not dictate how the SEC investigates violations under the Formal Order. Additionally, Ms. Weissman and members of her team are authorized to issue subpoenas, and the subpoenas were issued because they sought information that was critical and necessary to the ongoing investigation.

## **DISCUSSION**

The applicant argues that it exhausted all efforts in an attempt to obtain the

4

testimony and the documents sought from the respondent, including reissuing the subpoena for documents to Marin and serving Marin again, yet Marin still refuses to comply. Accordingly, the applicant seeks an Order to Show Cause why Marin should not be required to appear for testimony and produce documents pursuant to the subject subpoenas, and an Order enforcing the subpoenas.

This matter is before this Court pursuant to Sections 21(a) and (b) of the Exchange Act, 15 U.S.C. §§ 78(u)(a) and (b). Congress gave the SEC broad authority to conduct investigations and require production of evidence and testimony relevant to their investigations.

> In case of...refusal to obey a subpoena issued to any person, the Commission may invoke the aid of any court of the United States within which the jurisdiction of which such investigation or proceeding is carried on ... in requiring the attendance and testimony of witnesses and the production of books, papers, correspondence, memoranda, and other records.

Section 21(c) of the Exchange Act, 15 U.S.C. § 78u(c).

## A. Inextricably Intertwined/Comity

The respondent asserts that denial of the SEC's application is proper because this proceeding is "inextricably tied" to a proceeding in New Jersey involving Guy Gentile, that is on appeal. According to the respondent, "[o]nce jurisdiction vested over this controversy in the United States District Court for the District of New Jersey, this Court was divested of its authority to hear this case. Indeed, that court has seemingly stayed discovery in that action pending the ongoing appeal." (Response at p. 7). The respondent notes that if the Court does not deny the SEC's Application for the aforementioned reason, this matter should be stayed pending the resolution of the New

Jersey matter. Id.

The SEC, in its reply brief, explains that discovery was stayed in the Penny Stock case pending the resolution of the motion to dismiss, but the right of the SEC to continue investigating was not impaired. Thereafter the New Jersey Court granted the Motion to Dismiss and closed the case. Also as indicated by the SEC in the reply, the New Jersey Court has not had jurisdiction over the Penny Stock case since December 2017, when it was dismissed as time-barred. Further, this case and the Penny Stock Fraud case in New Jersey, SEC v. Gentile, Case No. 16-cv-1619 (D. N.J.) are unrelated. The two cases do not: (1) share the same facts; (2) seek relief against the same party; (3) share a cause of action; (4) involve the same type of violative conduct; (5) share the same subject matter; (6) raise the same legal issues; (7) seek the same relief; (8) arise from the same SEC investigation; (9) share a Formal Order of Investigation; or (10) involve the same SEC staff or regional office. Furthermore, there were no orders in the Penny Stock case regarding the subpoenas at issue in this case. The New Jersey Court also recently refused to stay the South Florida investigation.[2]

"Principles of comity come into play when separate courts are presented with the same lawsuit." Merrill Lynch, Pierce, Fenner & Smith, Inc., v. Haydu, 675 F.2d 1169, 1174 (11th Cir. 1982). This case seeks to enforce a subpoena for documents to Marin in an ongoing investigation different from the violations in the Penny Stock case. The two matters do not share the same Formal Order of Investigation. Accordingly, the

---

[2] The Order entered on May 14, 2019, in Gentile v. SEC, case number 19-5155(JLL)(JAD) in the District of New Jersey references the proceedings in South Florida and refuses to stay the case in South Florida.

6

undersigned finds that the two matters are not inextricably intertwined.

Moreover, the undersigned notes that on May 14, 2019, the District Court in New Jersey granted the SEC's Motion to Dismiss the Gentile v. SEC, 19-cv-5155 (D. N.J.) case[3] for lack of subject matter jurisdiction because the SEC did not waive sovereign immunity.

**B. Prerequisites**

In her response, the respondent asserts that the SEC's "Application should also be denied because the SEC has failed to comply with the mandatory prerequisites proscribed by statute." (DE # 13, at p. 7). The undersigned disagrees. The Eleventh Circuit has held that a district court's role in an action to enforce an administrative subpoena is limited in nature. *EEOC v. Tire Kingdom, Inc.*, 80 F.3d 449, 450 (11th Cir. 1996). Accordingly, a court should enforce an administrative subpoena if the subpoena is reasonably relevant to an investigation that is authorized and the demand is not too large. *Id.; United States v. Morton Salt*, 338 U.S. 632, 652 (1950) (courts should only question whether an administrative subpoena "is within the authority of the agency, the demand is not too indefinite, and the information sought is reasonably relevant"). Courts should consider certain criteria when determining whether to enforce an SEC subpoena. This criteria include: (1) the investigation is being conducted

---

[3] The District of New Jersey case of Gentile v. SEC, 19-5155 (JLL) (JAD) involved a Motion for Preliminary Injunction by the plaintiff, Guy Gentile, against the defendant requesting the Court to prevent the SEC from pursuing their investigation in Miami. The action was filed by Gentile two days after the SEC filed this matter to enforce the subpoenas issued in the Southern District of Florida. The SEC moved to dismiss the New Jersey matter for lack of subject matter jurisdiction. The Court granted the SEC's Motion to Dismiss and denied Guy Gentile's Motion for Preliminary Injunction as moot.

7

pursuant to a legitimate purpose; (2) the inquiry is relevant to that purpose; (3) the information the Commission seeks is not already in its possession; and (4) the Commission has fulfilled the necessary administrative steps. *United States v. Powell*, 379 U.S. 48, 57-58 (1964). Marin asserts that the SEC has not met the first, second, and fourth requirements listed above.

The SEC did comply with the necessary steps/administrative prerequisites. The subpoena was properly issued under their administrative procedures. The Miami Formal Order designates officers to conduct the Miami Investigation and it was authorized by the SEC. The subpoenas were signed by attorneys designated as officers of the SEC for the relevant investigation. Accordingly, the SEC met the necessary administrative requirements regarding the issuing and serving subpoenas.

Moreover, the information sought must be relevant to an investigation being conducted for a legitimate purpose. During the evidentiary hearing held before the undersigned the SEC demonstrated that the information sought from Marin is relevant to a legitimate purpose of the investigation. Specifically, the subpoena for documents sought information relating to: (1) Gentile; (2) Gentile's overseas brokerage firm, SureTrader; and (3) Mint Broker, Marin's holding company that received and disbursed funds in the United States from Gentile and SureTrader. The information is relevant to the SEC's investigation regarding whether Gentile, SureTrader, and others have violated federal securities laws by participating in unregistered broker-dealer conduct within the United States.

Additionally, there is a nexus between Marin and the Formal Order of Investigation. The information sought in the subpoenas relates to Gentile, SureTrader

8

(Gentile's company), and Mint Broker. Mint Broker is Marin's holding company which received and distributed funds in the United States from Gentile and his company SureTrader. The information is relevant to the investigation by the SEC into whether Gentile, his company SureTrader, and other entities acted in violation of Federal Securities law by participating in broker-dealer conduct within the United States that was not registered. Marin's argument that she is not relevant to the Miami Formal Order fails because the inquiry as to relevance is whether the information sought is relevant to the investigation, not whether the person from whom the information is sought is relevant to the investigation. See Powell 379 U.S. at 57-58. Accordingly, the undersigned finds that the information sought is relevant to a legitimate purpose of the investigation, and recommends that the SEC's application be granted accordingly.

### C. Personal Jurisdiction

The respondent asserts that if this Court does not dismiss or stay this action, the Court should deny the SEC's application because the Southern District of Florida lacks personal jurisdiction over the respondent. The respondent argues that "[t]here is absolutely no basis for jurisdiction over a non-Florida resident involving non-Florida activities under Florida's long-arm statute." (Response at 7). The Applicant asserts that the "[r]espondent's personal jurisdiction challenge ignores established principles of personal jurisdiction where, as here, a proceeding arises from a federal statute authorizing nationwide service of process." (SEC's Memorandum of Law in Support of Personal Jurisdiction at 1).

The determination of personal jurisdiction over a nonresident defendant

generally requires a two part analysis that involves the state's long arm statute and a due process analysis. SEC v. Prime Time Group, Inc., Case No. 09-cv-80952, 2010 WL 780198, *2 (S.D. Fla. Mar. 2, 2010) (citing Republic of Panama v. BCCI Holdings S.A., 119 F.3d 935, 942 (11th Cir. 1997)). "However, when a federal statute such as the Securities and Exchange Act provides for nationwide service of process, it becomes the statutory basis for personal jurisdiction." Id. Accordingly, it is unnecessary for the Court to address whether the respondent has minimum contacts with the State of Florida. Id. (citing SEC v. Carrillo, 115 F.3d 1540, 1543 (11th Cir. 1997)). "Rather, the Court must determine whether there are sufficient minimum contacts with the United States as a whole to satisfy the Due Process Clause of the Fifth Amendment so that maintenance of the suit does no offend 'traditional notions of fair play and substantial justice.'" Id. (Quoting Carrillo, 115 F.3d at 1543-44). In the BCCI Holdings case, the Eleventh Circuit held that a court must "first determine whether the applicable statute potentially confers jurisdiction over the defendant, and then determine whether the exercise of jurisdiction comports with due process." BCCI Holdings, 119 F.3d at 942 (reversing the dismissal by the Southern District of Florida for lack of jurisdiction). The undersigned finds that the SEC has satisfied both of the aforementioned elements.

With respect to the first element, the SEC began these proceedings pursuant to Section 21(c) of the Securities Exchange Act of 1934 (hereinafter, the Exchange Act), 15 U.S.C. §78u(c). The SEC sought compliance by Marin, the respondent, with the subpoenas issued under Section 21(a) of the Exchange Act, 15 U.S.C. §78u(a). It is

undisputed that nationwide service of process is authorized by the Exchange Act.[4]

"When a federal statute provides for nationwide service of process, it becomes the statutory basis for personal jurisdiction". BCCI Holdings, 119 F.3d at 942. Accordingly, "courts should presume that nationwide personal jurisdiction is necessary to further congressional objectives." Id. at 948. As a result, the proper inquiry for this part of the analysis is with respect to the sufficiency of the respondent's contact with the United States, not the sufficiency of the respondent's contacts with the State of Florida. Id. At 946-47. In BCCI Holdings, the lower court dismissed claims for lack of personal jurisdiction brought under the RICO statute, against defendants based in New York. The Eleventh Circuit reversed the lower court, because the statute permitted nationwide service and the New York defendants conducted business in the United States. The BCCI Holdings court noted that

> we need not pause long over the first question. Section 1965(d) of the RICO statute provides for service in any judicial district in which the defendant is found. When a federal statute provides for nationwide service of process, it becomes the statutory basis for personal jurisdiction. In re Chase & Sanborn Corp., 835 F.2d 1341, 1344 (11th Cir.1988), rev'd on other grounds sub. nom, Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989); see also Lisak v. Mercantile Bancorp, Inc., 834 F.2d 668, 671 (7th Cir.1987) (noting that section 1965 "creates personal jurisdiction by authorizing service"), cert. denied, 485 U.S. 1007, 108 S.Ct. 1472, 99 L.Ed.2d 700

---

[4] 15 U.S.C. § 78u(c) notes that "the Commission may invoke the aid of any court of the United States within the jurisdiction of which such investigation or proceeding is carried on, or where such person resides or carries on business...". Moreover, "[a]ll process in any such case may be served in the judicial district whereof such person is an inhabitant or wherever he may be found." 15 U.S.C. § 78u(c). See also Carrillo, 115 F.3d at 1544 & n. 4 (noting that the Exchange Act permits nationwide service of process due to the fact that the Act allows service of process "in the judicial district whereof such person is an inhabitant or wherever he may be found").

> (1988). Because the First American defendants are domestic corporations doing business in this country, the statutory basis for personal jurisdiction over these defendants is satisfied.

BCCI Holdings, 119 F.3d at 942. In this matter, the respondent resides in the United States and the subpoena at issue in this matter is directed to her United States based company. Accordingly, the undersigned finds that the statutory basis for personal jurisdiction over Marin is met in this matter.

The first prong having been met, the Court next turns to the due process analysis. "It is well established that when, as here, a federal statute provides the basis for jurisdiction, the constitutional limits of due process derive from the Fifth, rather than the Fourteenth, Amendment." Id. Because, as noted above, in this matter, a federal statue provides the bases for personal jurisdiction, the Fifth Amendment applies here.

> The burden is on the defendant to demonstrate that the assertion of jurisdiction in the forum will "make litigation 'so gravely difficult and inconvenient' that [he] unfairly is at a 'severe disadvantage' in comparison to his opponent." Burger King, 471 U.S. at 478, 105 S.Ct. at 2185 (citations omitted).

Id. at 947.

> This prong of the inquiry rarely defeats jurisdiction where a defendant has sufficient forum contacts, see Asahi Metal Indus., 480 U.S. at 116 (Brennan, J., concurring) (noting that only in 'rare cases' will inconvenience "defeat the reasonableness of jurisdiction) and is largely academic in non-diversity cases brought under a federal law which provides for nationwide service of process.

S.E.C. v. Softpoint, Inc., No. 95 CIV. 2951 GEL, 2001 WL 43611, at *5 (S.D.N.Y. Jan. 18, 2001). As noted in the BCCI Holdings case

> a defendant's contacts with the forum state play no magical

> role in the Fifth Amendment analysis. 'As a practical matter
> ... state lines cannot provide an accurate measure of the
> burdens that would be imposed on a defendant by requiring
> him to defend an action in a particular forum. There is
> nothing inherently burdensome about crossing a state line.'
> Wright & Miller, *supra,* § 1067.1, at 327. Thus, determining
> whether litigation imposes an undue burden on a litigant
> cannot be determined by evaluating only a defendant's
> contacts with the forum state. A court must therefore
> examine a defendant's aggregate contacts with the nation as
> a whole rather than his contacts with the forum state in
> conducting the Fifth Amendment analysis.

BCCI Holdings, 119 F.3d at 946–47. The Softpoint case noted that "most courts continue to apply the test as a constitutional floor to protect litigants from truly undue burdens" and that a very small number of courts "have ever declined jurisdiction, on fairness grounds, in such cases." Softpoint, Inc., 2001 WL 43611, at *5.

The Eleventh Circuit in the BCCI Holdings case noted

> that courts must engage in this balancing only if a defendant
> has established that his liberty interests actually have been
> infringed. *See* Fullerton, *supra,* at 40 ('While distant litigation
> often is more bothersome than litigation at home,
> inconvenience that is not substantial should be ignored for
> constitutional purposes.'). Only when a defendant
> challenging jurisdiction has 'present[ed] a compelling case
> that ... would render jurisdiction unreasonable,' *see Burger
> King*, 471 U.S. at 477, 105 S.Ct. at 2185, should courts
> weigh the federal interests favoring the exercise of jurisdiction.

BCCI Holdings, 119 F.3d at 946. Here, the respondent did not adequately demonstrate that her "liberty interests actually have been infringed". The respondent also failed to demonstrate that the Southern District of Florida is substantially inconvenient enough for her to "render jurisdiction unreasonable" in the Southern District of Florida. Accordingly, the undersigned finds that personal jurisdiction is proper in the Southern District of Florida and recommends that the District Court grant the SEC's Motion and issue an Order

Enforcing the Administrative Subpoenas.

## RECOMMENDATION

In accordance with the foregoing Report and Recommendation, the undersigned respectfully recommends that the Securities and Exchange Commission's Application for an Order to Show Cause and an Order Enforcing Administrative Subpoenas (DE # 1, 2/6/19) be **GRANTED**.

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Ursula Ungaro, United States District Judge. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. See 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (1989); 11th Cir. R. 3-1 (2016).

RESPECTFULLY SUBMITTED in Miami, Florida, this 31st day of May, 2019.

JOHN J. O'SULLIVAN
CHIEF UNITED STATES MAGISTRATE JUDGE